UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KELLI THOMPSON,

                          Plaintiff,

            v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                          Defendant.

Case No. C17-1402 RSL

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

Plaintiff Kelli Thompson appeals the final decision of the Commissioner of the

Social Security Administration ("Commissioner"), which denied her application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under

Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§401-33 and 1381-

83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth

below the Commissioner's decision is AFFIRMED.

## I.      FACTS AND PROCEDURAL HISTORY

Plaintiff is a 53-year-old woman with a bachelor's degree.  Administrative Record

("AR") at 39, 50. Her past work experience was as a nurse. AR at 39. Plaintiff has not engaged in substantial gainful activity since December 31, 2005. AR at 27.

Plaintiff protectively filed an application for DIB on August 8, 2013, and for SSI on December 13, 2013. AR at 110-11. Plaintiff asserted that she was disabled due to arthritis, depression, posttraumatic stress disorder ("PTSD"), and high blood pressure. AR at 112, 127.

The Commissioner denied plaintiff's claims initially and on reconsideration. AR at 125, 140, 157, 167. Plaintiff requested a hearing, which took place on December 17, 2015. AR at 48.[1] On March 1, 2016, the ALJ issued a decision finding that plaintiff was not disabled based on his finding that plaintiff could perform work available in significant numbers in the national economy. AR at 39-41. Plaintiff's request for review by the Appeals Council was denied on July 14, 2017, AR at 10, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. §405(g). On September 7, 2017, plaintiff filed a request for an extension of time to file a civil action in federal court. AR at 3. The record does not indicate a response from the Commissioner. On September 19, 2017, plaintiff filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. §405(g), this Court may set aside the Commissioner's denial

---

[1] A hearing was also held on August 6, 2015. AR at 98. However, the ALJ continued that hearing to allow plaintiff an opportunity to obtain counsel because plaintiff's attorney withdrew shortly beforehand. AR at 100-06.

of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. <u>Id.</u>

## III.    EVALUATING DISABILITY

As the claimant, Ms. Thompson bears the burden of proving that she is disabled within the meaning of the Act. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national

economy.  42 U.S.C. §423(d)(2)(A); <u>see also</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  <u>See</u> 20 C.F.R. §§404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  <u>Id.</u>  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  <u>Id.</u>  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  20 C.F.R. §§404.1520(c), 416.920(c).  If the claimant does not have such impairments, she is not disabled.  <u>Id.</u>  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required 12-month duration is disabled.  <u>Id.</u>

When the claimant's impairment neither meets nor equals one of the impairments

---

[2]  Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit.  20 C.F.R. §404.1572.

listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1520(g), 416.920(g); <u>Tackett</u>, 180 F.3d at 1099-1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

IV.    DECISION BELOW

On March 1, 2016, the ALJ issued a decision finding the following:

1.    The claimant has not engaged in substantial gainful activity since December 31, 2005, the alleged disability onset date (20 C.F.R. §§404.1571 *et seq.*, and 416.971 *et seq.*).

2.    The claimant has the following severe impairments: osteoarthritis, hypertension, anxiety disorder, affective disorder, and substance use disorder (20 C.F.R. §§404.1520(c) and 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§404.1520(d), 404.1525(d), 404.1526, 416.920(d), 416.925, and 416.926).

4.    The claimant has the RFC to perform medium work as defined in 20 C.F.R. §404.1567(c) and 416.967(c) except she can frequently handle bilaterally and frequently reach overhead. She is capable of

unskilled, simple, and routine work tasks, as well as familiar routine complex tasks. She can have frequent contact with five or fewer coworkers. She can have superficial contact with the general public. She can have occasional changes in her workplace, with a day's notice for material changes. Over the course of an eight-hour workday, she will be off-task up to ten percent of her work tasks.

5.   The claimant is unable to perform any past relevant work (20 C.F.R. §§404.1565 and 416.965).

6.   Considering the claimant's age, education, and work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§404.1569, 404.1569(a), 416.969 and 416.969(a)).

7.   The claimant has not been under a disability, as defined in the Act, from December 31, 2005, through the date of the ALJ's decision (20 C.F.R. §§404.1520(g) and 416.920(g)).

AR at 25-41.

## V.    ISSUES ON APPEAL

The issues on appeal are:

A.   Whether the ALJ erred at step two in failing to find that plaintiff's fibromyalgia was a severe impairment.

B.   Whether the ALJ erred in weighing plaintiff's allegations.

C.   Whether the ALJ erred in weighing the medical opinions.

Dkt. 10 at 1.

## VI.    DISCUSSION

**A.    Evaluation of Plaintiff's Severe Impairments at Step Two**

Plaintiff argues that the ALJ erred at step two by failing to find plaintiff's fibromyalgia to be a severe impairment. See id. On January 15, 2014, plaintiff saw Yuli

McCann, M.D., who reported that plaintiff had a "history of chronic bilateral hand/wrist pain secondary to severe [osteoarthritis]." AR at 549. Dr. McCann opined that plaintiff "meets criteria for fibromyalgia ie [sic] chronic pain, multiple tender points, trouble sleeping, [and] anxiety." Id. The ALJ did not specifically address Dr. McCann's opinion or discuss fibromyalgia, although he did address the symptoms Dr. McCann described. See AR at 32-34, 36.

Plaintiff misunderstands the purpose of step two of the sequential evaluation process. The step-two inquiry is "merely a threshold determination meant to screen out weak claims." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987)). At step two, the ALJ must determine if the claimant suffers from any impairments that are "severe." 20 C.F.R. §§404.1520(c) and 416.920(c). As long as the claimant has at least one severe impairment, the disability inquiry moves on to step three. See 20 C.F.R. §§404.1520(d), 416.920(d). The step-two inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." Buck, 869 F.3d at 1048-49. At the RFC phase, the ALJ must consider the claimant's limitations from all impairments, including those that are not severe. Id. at 1049. "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." Id. (emphasis omitted). Thus, a claimant cannot be prejudiced by failure to consider a particular impairment severe at step two so long as the ALJ finds the claimant has at least one severe impairment. Id. (citing Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)).

Here, the ALJ found in plaintiff's favor at step two, determining that she had several severe impairments, including osteoarthritis. See AR at 27. Plaintiff therefore cannot show harmful error on this basis.

The more relevant issue is whether the ALJ considered all limitations that stemmed from plaintiff's claimed fibromyalgia in his RFC determination. See Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). Plaintiff argues that the ALJ failed to consider limitations in her ability to use her hands and stand or walk for more than short periods of time. AR at 4. But the ALJ considered plaintiff's alleged hand pain, he just did so on the basis that it was caused by osteoarthritis. See AR at 32-33. The ALJ also considered plaintiff's alleged limitations on standing and walking. See AR at 33-34. Thus, the ALJ did not commit harmful error in failing to include fibromyalgia as a severe impairment at step two of the disability determination.

**B.    Evaluation of Plaintiff's Testimony**

Plaintiff argues that the ALJ erred in rejecting plaintiff's subjective symptom testimony. See Dkt. 10 at 15-18. The Court disagrees.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only

show that the impairment could reasonably have caused some degree of the symptom; she does not have to show that the impairment could reasonably be expected to cause the severity of the symptom alleged.  <u>Id.</u>  The ALJ found that plaintiff met this first step because her medically determinable impairments could reasonably be expected to cause her alleged symptoms.  AR at 31.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so.  This is not an easy requirement to meet.'"  <u>Trevizo</u>, 871 F.3d at 678 (quoting <u>Garrison</u>, 759 F.3d at 1014-15).  In evaluating the ALJ's determination at this step, the court may not substitute its judgment for that of the ALJ.  <u>Fair v. Bowen</u>, 885 F.2d 597, 604 (9th Cir. 1989).  As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail.  <u>See</u> <u>Molina</u>, 674 F.3d at 1115 (stating that the ALJ's decision to discredit the claimant's testimony should be upheld if the ALJ provided valid reasons supported by the record even if the ALJ also provided one or more invalid reasons).

The ALJ, finding no evidence of malingering, held that plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible.[3]  AR at 31.  The ALJ gave at least three specific, clear, and convincing

[3] The Commissioner issued Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 (2017) on October 25, 2017, which "eliminat[ed] the use of the term credibility from our sub-regulatory policy" and "clarif[ied] that subjective symptom testimony is not an examination of an individual's character," after the ALJ's decision here.  This does not change the present analysis, however, because even assuming SSR 16-3p applies retroactively, the Ninth Circuit has held that SSR 16-3p is consistent with existing Ninth Circuit precedent on evaluation of a claimant's

reasons for rejecting plaintiff's testimony: (1) it was inconsistent with plaintiff's daily activities; (2) plaintiff gave "inconsistent statements regarding the circumstances of her nursing certification;" and (3) plaintiff gave inconsistent statements regarding her substance and alcohol use, while also exhibiting drug-seeking behavior. AR at 33-35.

### 1. Inconsistency with Daily Activities

The ALJ's most convincing reason for rejecting plaintiff's symptom testimony is its inconsistency with plaintiff's daily activities. An ALJ may use a claimant's activities to form the basis of an adverse credibility determination if they "contradict [her] other testimony." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

Plaintiff testified that she suffered from three to four panic attacks a day, and only left her home about once a week due to her mental health symptoms. AR at 31. The ALJ pointed out, however, that plaintiff had worked as a cashier at Walgreens for 24 hours per week between March and September 2007. AR at 29, 305. In August 2013, plaintiff reported caring for her two young children and taking them to public settings. AR at 29, 819-20. In July 2014, plaintiff reported that she primarily traveled via public transportation and left the house twice a day. AR at 29, 352. The ALJ's determination that these activities were inconsistent with plaintiff's symptom testimony was a reasonable interpretation of the evidence, and thus must be upheld. See Thomas, 278 F.3d at 954.

testimony. See Trevizo, 871 F.3d at 678 n.5.

As to her physical symptoms, plaintiff "testified that she was unable to write, type, or open doors because of arthritis in both of her hands. She also described arthritis in her elbows, shoulders, and right knee. She stated that she needed to rest after walking or standing for five minutes." AR at 31. Again, the ALJ noted inconsistencies. In June 2010, plaintiff reported acting as the primary caretaker for her disabled husband, helping him transfer between sitting and standing positions. AR at 33, 896. In August 2010, plaintiff "report[ed] painting the crown molding at her house over the last [three] days." AR at 33, 1372. In 2011, plaintiff told medical providers she was "very busy" working as a housecleaner. AR at 33, 416, 420, 425. (The ALJ noted that this work was not documented on plaintiff's income or work history reports.) In November 2013, plaintiff reported that she walks to stay active and comply with exercise recommendations. AR at 34, 780. In May 2014, plaintiff reported that a typical day involved walking around Echo Lake, and gardening. AR at 34, 593. In June 2014, she again reported that she was remaining active by gardening. AR at 34, 1266.

The ALJ's decision shows a reasonable evaluation of the evidence. Plaintiff fails to demonstrate any error in the ALJ's consideration of her daily activities as undermining her symptom testimony.

2.   Inconsistent Statements Regarding Nursing License

The ALJ was also entitled to reject plaintiff's symptom testimony based on her inconsistent statements regarding her nursing certification. An ALJ may discount a claimant's testimony based on inconsistencies in her testimony and records. See Smolen

v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ noted that plaintiff testified at the hearing that she let her nursing license lapse because of limited finances and an inability to work. AR at 34, 84. In May 2011, however, plaintiff reported that she was trying to get back into nursing, but "ha[d] to wait until an old out of state DUI is resolved." AR at 34, 448. Elsewhere, plaintiff indicated that she lost her nursing license because she had to travel out of state to care for her father. AR at 34, 445. The ALJ was entitled to rely on these inconsistencies in discounting plaintiff's symptom testimony. See also Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (upholding ALJ's rejection of plaintiff's symptom testimony where plaintiff left job because he was laid off rather than because of injury).

3. Inconsistent Statements Regarding Alcohol and Substance Use

The ALJ was further entitled to reject plaintiff's symptom testimony based on her inconsistent statements regarding her alcohol and substance use, as well as her drug-seeking behavior. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006) (holding that "conflicting or inconsistent testimony concerning alcohol use can contribute to an adverse credibility finding"); Thomas, 278 F.3d at 959 (upholding a credibility determination where the claimant "present[ed] conflicting information about her drug and alcohol use"). In April 2013, plaintiff denied having any history of substance abuse. AR at 34, 851. But in October 2007, she reported to a counselor that she had three previous convictions for driving under the influence. AR at 34, 457. In November 2013, plaintiff was denied hydrocodone after providers discovered she had been filling more than one

prescription at a time, while at the same time her urine analysis was negative for opiates. AR at 34, 801.  The ALJ reasonably interpreted this evidence, and the Court will not disturb that decision.  See Thomas, 278 F.3d at 959.

Moreover, the ALJ noted that plaintiff's medical records "document numerous efforts to manipulate treatment providers into giving her controlled substances, in a manner that detracts from her credibility regarding her pain symptoms."  AR at 35.  In addition to the hydrocodone incident above, plaintiff became angry at providers on several occasions when she was told she would not be getting narcotics.  At a January 2014 appointment, plaintiff became angry when she was told she would not be receiving Vicodin.  AR at 35, 704.  At a February 2014 appointment, plaintiff asked for Vicodin "immediately" upon entering the room, and spent much of the appointment yelling after the provider told her she would not be prescribing narcotics.  AR at 35, 147-48.  In June 2015, plaintiff became angry and left her examination when the provider spoke to plaintiff about non-narcotic options for pain management.  AR at 35, 1175.  The ALJ could reasonably conclude from this evidence that plaintiff exaggerated her symptoms for the purpose of receiving narcotics, and that her symptom testimony was therefore not entirely credible.  See Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (stating that the ALJ properly rejected the claimant's testimony based on the finding that he exaggerated his pain complaints in order to receive prescription pain medication).

4.     Harmless Error

The ALJ gave four other reasons for rejecting plaintiff's symptom testimony,

which plaintiff contends were erroneous: (1) plaintiff did not seek treatment for her

mental health issues until several years after her alleged disability onset date; (2) she did

not comply with treatment recommendations; (3) her testimony was contradicted by the

medical records; and (4) her symptoms are well-controlled by medication and have

shown significant improvement.  AR at 31-33.  The Court need not decide whether the

ALJ erred in reaching these conclusions because the ALJ gave other valid reasons for

rejecting plaintiff's symptom testimony, so any error here was harmless.  See Bray v.

Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (finding harmless

error where ALJ included erroneous bases for discounting claimant's testimony because

ALJ included other valid bases supporting the decision); Carmickle, 533 F.3d at 1162-63

(same).

C.      **Evaluation of the Medical Evidence**

Plaintiff argues that the ALJ erred in failing to give full weight to the opinions of

her treating psychiatrist, Molly Shores, M.D.; examining psychologist James Czysz,

Psy.D.; examining physician Dan Phan, M.D.; and mental health counselor Rebekah

Barton. Dkt. 10 at 5-15.  The ALJ is responsible for assessing witness credibility and

resolving any conflicts or ambiguities in the medical evidence.  See Reddick v. Chater,

157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not

conclusive, "questions of credibility and resolution of conflicts" are solely the functions

of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the

ALJ's conclusion must be upheld" as long as it is supported by substantial evidence.

Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).

## 1. Molly Shores, M.D.

Dr. Shores was plaintiff's treating psychiatrist, seeing her 15 times between December 2013 and October 2016. AR at 1271-78. In October 2014, Dr. Shores opined that plaintiff was unable to maintain employment due to her severe PTSD, panic disorder with agoraphobia, and depression. AR at 874. A year later, in October 2015, Dr. Shores completed a check-box-type form opining that plaintiff had marked to severe limitations in several areas of sustained concentration and persistence, social interaction, and adaptation. AR at 1272-73. Dr. Shores opined that plaintiff would likely be absent from work on average more than three times a month. AR at 1274.

The opinion of a treating doctor is given deference, but it "is not necessarily conclusive as to either the [patient's] physical condition or the ultimate issue of disability." Morgan, 169 F.3d at 600. In order to reject a treating doctor's opinion that is contradicted, the ALJ must provide "'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" Id. (quoting Andrews, 53 F.3d at 1041). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725 (citing Magallanes, 881 F.2d at 751). The court may also draw "specific and legitimate inferences from the ALJ's opinion." Magallanes, 881 F.2d at 755.

The ALJ rejected Dr. Shores's opinions because they were contradicted by

plaintiff's daily activities; inconsistent with the longitudinal examination findings and treatment records; and largely based on plaintiff's subjective reports, which the ALJ rejected. AR at 38.

The ALJ properly discredited Dr. Shores's opinions based on his determination that they were contradicted by plaintiff's daily activities. A material inconsistency between a doctor's opinion and a claimant's activities can furnish a specific, legitimate reason for rejecting the treating physician's opinion. See, e.g., Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's decision to discredit treating physician where his opinions were "inconsistent with the level of activity that [plaintiff] engaged in"); Morgan, 169 F.3d at 601-02 (upholding ALJ's rejection of treating physician's opinion where it was contradicted by plaintiff's daily activities).

Here, plaintiff worked part-time as a cashier at Walgreens during her claimed period of disability. AR at 29, 305. In August 2013, plaintiff reported that she cared for her two young children and disabled husband, taking the children to public settings. AR at 29, 819-20. And, in July 2014, plaintiff reported leaving the house twice a day, traveling primarily via public transportation. AR at 29, 352. The ALJ could reasonably conclude that these facts contradicted Dr. Shores's opinions, and thus this was a specific, legitimate reason for discounting Dr. Shores's opinions.

The ALJ was also entitled to conclude that Dr. Shores's opinions were contradicted by plaintiff's "longitudinal examination findings and treatment records," and discount her opinion on this basis. When evaluating the medical evidence, the ALJ

"cannot simply pick out a few isolated instances" of medical health, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of her symptoms." Attmore v. Colvin, 827 F.3d 872, 877 (9th Cir. 2016). When the evidence is inconclusive, however, the ALJ's conclusions will be upheld as long as they are rational and adequately explained. See Morgan, 169 F.3d at 601.

The ALJ here identified a number of facts in the medical record that contradicted Dr. Shores's opinions. Plaintiff was found to have euthymic mood, appropriate affect, normal speech, and organized thought process at dozens of appointments between May 2013 and August 2015. AR at 31-32 (citing over 30 points in the record). During an emergency room visit in August 2012 following a car accident, plaintiff showed no symptoms of mood swings, panic attacks, or memory loss. AR at 31, 891. Other examinations "routinely found organized thought process, intact memory, and at least average intellectual functioning." AR at 29 (citing over 30 points in the record). On several occasions, plaintiff herself denied experiencing the symptoms Dr. Shores found. In February 2010, plaintiff denied having any history of mood disorders. AR at 31, 1400. In November 2010, plaintiff denied suffering from depression. AR at 31, 1358. In April 2013, plaintiff denied suffering from depression or panic attacks. AR at 29, 850. The ALJ provided a detailed summary of the facts here, and reasonably concluded that the medical evidence contradicted Dr. Shores's opinions. This was therefore also a specific, legitimate reason to discount Dr. Shores's opinions.

The ALJ's third reason for discounting Dr. Shores's opinions, that they were too heavily based on plaintiff's subjective reports, is a more difficult issue. An ALJ may discount a treating provider's opinion where it is "based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible." Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)). However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." Buck, 869 F.3d at 1049. Psychiatric evaluations "will always depend in part on the patient's self-report" because "unlike a broken arm, a mind cannot be x-rayed." Id. at 1049 (internal quotation marks omitted) (quoting Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987)).

As discussed above, the ALJ reasonably concluded that plaintiff's subjective symptom reports were not credible. However, the record does not clearly establish that Dr. Shores based her opinions primarily on plaintiff's self-report, or that the ALJ was justified in rejecting her opinions on that basis. Dr. Shores saw plaintiff 15 times between December 11, 2013 and October 15, 2016, acting as plaintiff's treating psychiatrist. AR at 874, 1271. Her opinions were presumably based on her clinical observations and evaluation of plaintiff during the course of that treatment, considered objective measures in the psychological context. See Buck, 869 F.3d at 1049.

Ultimately, the Court need not decide whether the ALJ erred in rejecting Dr. Shores's opinions on this basis because even if he did, any error must be considered

harmless.  As the Court has explained, the ALJ gave two independent, valid reasons for discounting Dr. Shores's opinions.  Plaintiff thus cannot meet her burden of showing actual prejudice from this potential error, and thus the ALJ's decision is upheld.  <u>See Carmickle</u>, 533 F.3d at 1162-63.

## 2. <u>James Czysz, Psy.D.</u>

Dr. Czysz performed a psychological examination of plaintiff on November 5, 2013.  AR at 483.  Based on his examination, Dr. Czysz diagnosed plaintiff with major depressive disorder, recurrent, severe; PTSD; and alcohol abuse in early remission.  AR at 484.  He opined that plaintiff had marked limitations in her ability to perform activities within a normal work schedule, communicate and perform effectively in a work setting, maintain appropriate work behavior, and complete a normal workday and week without interruptions from her psychologically-based symptoms.  AR at 485.

Like that of a treating doctor, the ALJ may only reject the contradicted opinion of an examining doctor if he provides specific and legitimate reasons that are supported by substantial evidence in the record for doing so.  <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995).

The ALJ gave minimal weight to Dr. Czysz's opinions because his findings were contradicted by plaintiff's daily activities; his findings were "incompatible" with plaintiff's treatment records and longitudinal examination findings; his treatment records were internally inconsistent; and he "did not express any basis for his multifaceted assessment of psychological disability."  AR at 37.

The ALJ's first two reasons for discounting Dr. Czysz's opinions—that they are contradicted by plaintiff's daily activities and treatment records—are the same as those given for discounting Dr. Shores's opinions, and are equally valid. See supra Part VI.C.1.

The ALJ's third reason, that Dr. Czysz's opinions were internally inconsistent, was based on the fact that Dr. Czysz "wrote that the claimant appears to be quite motivated and capable," and "[h]is examination found good grooming, cooperative behavior, normal speech, organized thought process, normal judgment, normal memory, and normal concentration." AR at 37 (internal quotation marks omitted). The ALJ could reasonably conclude that these findings were inconsistent with Dr. Czysz's opinions on plaintiff's work limitations, and thus did not err in discounting those opinions. See, e.g., Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (upholding ALJ's decision to discount plaintiff's treating psychologist based on contradictions in psychologist's opinion).

The ALJ's conclusion that Dr. Czysz "did not express a basis for his multifaceted assessment of psychological disability" is not supported by substantial evidence in the record. Dr. Czysz conducted a clinical interview and mental status exam of plaintiff. AR at 483, 486-87. He identified particular symptoms, describing their severity and frequency based on plaintiff's reports. AR at 484. While Dr. Czysz did not identify what, if any, specific psychological tests he performed on plaintiff, his records clearly indicate that he based his assessment of psychological disability at least on his clinical

interview and mental status exam.  Absent a more detailed explanation, the ALJ could not discount Dr. Czysz's opinions on this basis.

Again, however, plaintiff cannot establish more than harmless error.  The ALJ gave three valid reasons for discounting Dr. Czysz's opinions, and there is nothing to suggest that he would have reached a different conclusion had he omitted his one invalid reason.  See Carmickle, 533 F.3d at 1162-63.  The ALJ therefore did not harmfully err in discounting Dr. Czysz's opinions.

### 3.  Dan Phan, M.D.

Dr. Phan examined plaintiff on March 25, 2014.  AR at 496.  He diagnosed plaintiff with arthritis, hypertension, depression, and PTSD (though he noted that the "[m]ental health assessment was completed elsewhere in 11/2013").  AR at 498.  Dr. Phan opined that plaintiff had the following functional limitations in a typical eight-hour work day: (1) she could sit for up to eight hours cumulatively; (2) she could stand and walk up to eight hours cumulatively; (3) she had no postural limitations; (4) she could lift and carry 40-50 pounds occasionally, and 20-25 pounds frequently; and (5) she "should avoid works required [sic] frequent and heavy grasping, gripping, twisting and turning." Id.

Because Dr. Phan was an examining physician, the ALJ was required to give specific and legitimate reasons for rejecting his testimony.  Lester, 81 F.3d at 830-31.

The ALJ gave Dr. Phan's opinions some weight, as the evidence was "consistent with [plaintiff's] ability to perform medium work" as defined by the federal regulations.

AR at 36. The ALJ discounted Dr. Phan's opinion on plaintiff's frequent handling

limitations because the ALJ found it to be contradicted by plaintiff's daily activities, and

her treatment records. Id.

The ALJ's determination that Dr. Phan's opinion on handling was contradicted by

plaintiff's daily activities is supported by substantial evidence in the record. As the ALJ

noted, plaintiff reported working as a housecleaner in 2011 and 2013. AR at 36, 425,

835. She had further been active by gardening in 2014. AR at 36, 1266.

The ALJ's determination that Dr. Phan's opinion on handling limitations was

contradicted by plaintiff's treatment records is also supported by substantial evidence in

the record. Dr. Phan reported that plaintiff showed intact sensation, and full motor

strength, including full bilateral grip strength. AR at 36, 497-98. At multiple

appointments between April 2010 and October 2015, plaintiff exhibited normal grip

strength, sensation, and range of motion in her hands. AR at 36, 703, 802, 1215, 1322,

1392, 1494. The ALJ could reasonably interpret this evidence as not supporting Dr.

Phan's opinion on plaintiff's handling limitations.

Plaintiff argues that the ALJ erred here because he did not consider the fact that

plaintiff's objective medical findings are consistent with fibromyalgia. See Dkt. 10 at 14.

While it is true that a lack of objective medical findings may be consistent with a

diagnosis of fibromyalgia, see Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017)

(citations omitted), Dr. Phan did not diagnose plaintiff with fibromyalgia or attribute her

symptoms to that condition. See AR at 498. The ALJ reasonably evaluated the

diagnoses Dr. Phan did make, and the medical evidence Dr. Phan relied on in forming his opinions. The ALJ was not obligated to consider whether Dr. Phan should have made a different diagnosis to support plaintiff's claimed limitations, nor was the ALJ qualified to do so. Cf. Mkrtchyan v. Colvin, No. C14-1209JLR, 2015 WL 2131222, at *6 (W.D. Wash. May 5, 2015) (noting that "[b]ecause ALJs are as a rule not doctors, 'courts have regularly warned ALJs not to attempt to interpret test results or other raw medical data'") (quoting Worzalla v. Barnhart, 311 F. Supp. 2d 782, 796 (E.D. Wis. 2004)). The ALJ thus did not err in failing to consider whether Dr. Phan's opinions were consistent with a diagnosis Dr. Phan did not make.

In sum, the ALJ did not err in giving partial weight to Dr. Phan's opinions.

### 4. Rebekah Barton

Ms. Barton has been plaintiff's mental health counselor since April 2013. AR at 1443. In October 2015, Ms. Barton opined that plaintiff met the criteria for PTSD related to military sexual trauma, and had been diagnosed with panic disorder and depression. Id. Ms. Barton reported that plaintiff has a number of symptoms, including acute anxiety, strong reactions to trauma cues, difficulty trusting others, sleep problems, and difficulty concentrating, all of which "impact her ability to function at times." Id. Ms. Barton noted that these symptoms have "impacted [plaintiff's] ability to get along with others, ability to make appointments, and ability to be fully present when she does make appointments." Id.

Ms. Barton is not an acceptable medical source, see 20 C.F.R. § 404.1502(a), and

thus her opinion is treated as that of a lay witness as opposed to that of a doctor.  See

Molina, 674 F.3d at 1111.  The ALJ was required to consider Ms. Barton's testimony as

it concerns plaintiff's ability to work.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir.

2009) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir.

2005)).  Unlike plaintiff's doctors, however, the ALJ only needed to give "germane"

reasons for rejecting Ms. Barton's lay testimony.  Molina, 674 F.3d at 1111 (internal

citations and quotation marks omitted).

Here, the ALJ rejected Ms. Barton's testimony because it conflicted with

plaintiff's daily activities; it was contradicted by plaintiff's medical records and

longitudinal examination findings; and it was vague in its assessment of plaintiff's

functional limitations.  AR at 38.

The ALJ's first two reasons are sufficiently germane to Ms. Barton's testimony for

the same reasons they are specific, legitimate justifications for discounting the opinions

of Drs. Shores and Czysz.  See supra Parts VI.C.1-2.

The ALJ's third reason for rejecting Ms. Barton's testimony is also sufficiently

germane.  Ms. Barton stated little more than that plaintiff's symptoms "impact" her

ability to engage in everyday activities.  See AR at 1443.  The Court cannot say the ALJ

unreasonably discounted this testimony based on its lack of detail.

Plaintiff has thus failed to show that the ALJ harmfully erred in his treatment of

the medical evidence, and the Court will not disturb the ALJ's decision.

///

## VII.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

DATED this 22nd day of June, 2018.

*Robert S Lasnik*
Robert S. Lasnik
United States District Judge